1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  MARY WYREN,                           No. CIV S-07-0489-FCD-CMK

12              Plaintiff,

13       vs.                           FINDINGS AND RECOMMENDATIONS

14  COMMISSIONER OF SOCIAL
    SECURITY,

15              Defendant.

16  _____/

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pending before the court are plaintiff's motion for summary judgment (Docs. 15 and 16) and

21  defendant's cross-motion for summary judgment (Doc. 17).

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 18, 2004.  In her application, plaintiff claims that disability began on July 1, 1994.  Plaintiff claims in her motion for summary judgment that her disability results from "degenerative disc disease with associated severe pain and Major Depression."  Plaintiff's claim was initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on May 11, 2006, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.   In his June 23, 2006, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 et seq.);

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine (20 CFR 416.920(c));

3. This claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work and the full range of sedentary work.  Specifically, the claimant can lift 25 pounds occasionally and 10 pounds frequently.  She can stand/walk four hours of an eight hour work day.  She is limited to no more than occasion [sic] bending, balancing, climbing, stooping, crouching, crawling, or over shoulder-level reaching;

5. The claimant has no past relevant work as defined in the regulations (20 CFR 416.965);

6. The claimant was born on March 17, 1962 and has been a younger individual 18-44 throughout the period at issue (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR  416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966); and

1    10.    The claimant has not been under a "disability," as defined in the Social
            Security Act, at any time through the date of this decision (20 CFR
2           416.920(g)).

3    After the Appeals Council declined review on November 2, 2006, this appeal followed.

4

5                          **II.  SUMMARY OF THE EVIDENCE**

6           Plaintiff provides the following summary of the evidence, which the court

7    accepts:

8           Ms. Wyren was forty-two years old when she first filed her claim
     in 2004, alleging an onset date of July 1, 2004[1] (CT 46).  She based her
9    disability claim on degenerative disc disease with associated severe pain
     and Major Depression.  She is a high school graduate and has no past
10   relevant work, having earned very little and nothing since 1989 (CT 48).
            She underwent five lumbar laminectomies between 1998-2002, as
11   well as subsequent physical therapy treatment, with no relief from her low
     back pain which radiated down her lower extremities (CT 100).  A CT
12   scan of the lumbar spine dated June 19, 2003 revealed the following: post-
     operative change status post L4-5 laminectomy fusion without significant
13   spinal canal or neural foraminal compromise; status post laminectomy and
     spinal decompression at L5- S1 with hardware take down; apparent
14   incomplete fusion at this level; L3-4 disk bulging ligamentum flaval
     hypertrophy with mild spinal stenosis; L1-2 right paracentral broadbased
15   disk protrusion with mild thecal canal deformity and mild reduction in
     spinal canal AP diameter.
16          An MRI of the lumbar spine from May 20, 2004 revealed the
     following; cervical kyphosis, multilevel retrolisthesis and spondylotic
17   changes, moderate cord compression at C4-5, mild to moderate cord
     compression at C3-4, mild cord compression at C5-6 and C6-7 levels;
18   compromise of right C3-4 and right C5-6 neural foramina; difficult to
     asses [sic] for cord signal alteration on T2 weighted images due to
19   respiration artifacts (CT 131).
            An MRI of the lumbar spine from September 29, 2006 revealed
20   mild to moderate degenerative changes of the intervertebral disc spaces
     through the cervical vertebral column (CT [pages omitted by plaintiff]).  A
21   CT scan of the lumbar spine from May 11, 2006 revealed: wide posterior
     decompression at L4-5 and L5-S1; L4-5 and L5-S1 disc space narrowing
22   with solid fusion on the right at L4-5; moderate broad-based L3-4
     protrusion impressing the ventral thecal sac (CT [pages omitted by
23   plaintiff]).

24   ///

25   _____

26        [1]      In her application, plaintiff alleged an onset date of July 1994, not 2004.

                                        3

Plaintiff [sic] underwent a consultative evaluation by a neurologist at the request of the Social Security Administration on September 24, 2004 (CT 154-159). On examination she had limited range of motion of the lumbar spine, severe spasm of lumbar paraspinals and mild weakness of both legs. Tendon reflexes in both legs were absent and sensation was diminished over both feet. He described this condition as a failed back surgery syndrome. He concluded that she could sit for six hours and stand/walk for four hours in an eight hour day, no more than thirty minutes at a time. Repetitive bending, climbing and stooping were likely to exacerbate low back pain.

Beginning in January 2005 plaintiff was treated for depression at El Dorado County Mental Health by Jane Williamson MFT and Robert Price, M.D. Her diagnosis was Axis I Major Depression, History of Polysubstance Abuse in remission; Axis V Global Assessment of Functioning was 45, indicating severe difficulty in functioning. Ms. Williamson assessed her as having marked difficulties in activities of daily living, social functioning, concentration, persistence and pace, and in ability to adapt to work-type settings (CT 201-202).

In a functional assessment dated November 22, 2005, signed by Ms. Williamson and Dr. Price, they opined that plaintiff was moderately or markedly limited in all but one area of functioning (CT 198-200).

On October 18, 2004 psychiatrist Ramon Garcia, M.D. examined plaintiff at the request of the Social Security Administration (CT 160-161). He offered a diagnosis of Axis I Major Depression, recurrent; Axis V GAF 70. Dr. Garcia concluded that she was able to understand and communicate well. He commented that plaintiff "argued" that she could not focus because of pain and that her pain was debilitating.

## III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v.

4

1   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

2   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

3   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

4   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

5   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

6   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

7   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

8   Cir. 1988).

9

10                                   **IV.  DISCUSSION**

11          In her motion for summary judgment, plaintiff argues that:  (1) the ALJ erred in

12   rejecting the opinions of her treating mental health professionals, Jane Williamson and Dr. Price;

13   and (2) the ALJ erred in concluding that plaintiff's mental impairment was not severe.  Plaintiff

14   does not raise any arguments concerning her physical impairments.

15          A.     **Evaluation of Medical Opinions**

16          The weight given to medical opinions depends in part on whether they are

17   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

18   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

19   professional, who has a greater opportunity to know and observe the patient as an individual,

20   than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

21   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

22   to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

23   (9th Cir. 1990).

24   / / /

25   / / /

26   / / /

1        In addition to considering its source, to evaluate whether the Commissioner

2   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

3   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

4   uncontradicted opinion of a treating or examining medical professional only for "clear and

5   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

6   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7   by an examining professional's opinion which is supported by different independent clinical

8   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

10  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

11  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

12  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

13  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

14  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

15  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

16  without other evidence, is insufficient to reject the opinion of a treating or examining

17  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

18  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

19  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

20  see also Magallanes, 881 F.2d at 751.

21        Plaintiff's argument, in its entirety, is as follows:

22        In the instant case the ALJ rejected the assessment from treating
          therapist Jane Williamson MFT and treating psychiatrist Robert Price,
23        M.D. which supports a finding of disability (CT 19-20).  Their opinions
          are contradicted by the opinion of the consultative examiner.  Therefore,
24        the ALJ was required to give specific and legitimate reasons for rejecting
          them.  His reasons may be specific but that are not legitimate.

25

26  / / /

In discounting the opinion of these treating sources, the ALJ implicitly accords great weight to the report by a consultative psychiatrist who saw Ms. Wyren only once and to a nonexamining physician and one who saw her only once, contrast to the treating sources who saw her for a total of twenty-two sessions. The ALJ argues that the notes from this facility are sparse and they show normal cognitive functioning which is supposedly inconsistent with a finding of marked limitation in concentration and persistence. Clearly, an individual can be cognitively intact but nevertheless have difficulty concentrating or maintaining persistence and pace, due to pain and depression. The ALJ's reasoning is not convincing and is contrary to established rules and regulations governing this issue.

As to Ms. Williamson and Dr. Price,[2] the ALJ stated:

The Claimant sought treatment at the El Dorado County Mental Health Center in January 2005. She said that she was experiencing anxiety when she was home alone. She also expressed some depression and sleep disturbance due to recent life circumstances. Jane Williamson, the claimant's therapist, recommended medication and relaxation therapy. Later records show some improvement in sleep with the medication, although she still had some sleep disturbance due to pain. Treatment notes through May 2005 showed most of her complaints were related to pain and sleep disturbance from her physical disorders. In April 2005 mental status examination findings showed that the claimant has slightly pressured speech. Her affect was blunted. However, she had good short-term memory functioning and her cognition was intact. She said that she participated in activities with a local community church. (Exhibits 8F, 10F).

After May 2005, there was a break in the treatment records until February 2006, at which point[] notes show the claimant had symptoms of depression, although the only specific symptom noted was sleep disturbance. Relaxation techniques were again recommended. Treatment notes in March . . . 2006 showed [t]he claimant continued to experience sleep disturbance with only intermittent improvement with medication. (Exhibits 10F, 13F).

In June 2005, Ms. Williamson completed a medical source statement assessing marked limitations in activities of daily living; social functioning; concentration, persistence, and pace; and in the ability to adapt to work type setting. In November 2005, Ann Price, M.D., and Ms. Williamson completed another medical source statement indicating that the claimant had moderate limitations in completing even simple tasks and in maintaining regular work attendance, and marked limitations in performing tasks at a consistent pace and getting along with others.

---

[2]     In her motion for summary judgment, plaintiff repeatedly refers to Dr. Robert Price. The record reflects, however, that plaintiff was treated by Dr. Ann Price.

However, these opinions and the claimant's allegations of severe mental functional limitations are rejected for the following reasons.

As shown above, the observations and clinical findings noted by Ms. Williamson in treatment records from El Dorado Mental Health are not consistent with an assessment of moderate or marked limitations in functioning.  Treatment notes are somewhat sparse and focus primarily on sleep disturbance (which was somewhat helped by medication) and the claimant's physical complaints (which are addressed separately below). Ms. Williamson's notes show normal cognitive functioning, inconsistent with her assessment of marked limitations in concentration, persistence, and pace.  She does not note any significant problems interacting with others in the treatment records, nor are there any annotations regarding social isolation, panic attacks, or severe behavioral abnormalities to support an assessment of moderate or marked social limitations.  The claimant had alleged limited activities, but this was primarily due to her physical disorders rather than depression or anxiety.  (Exhibit 2E).  The record contains no evidence of any significant mental deterioration or decompensation.  It is also noted that, although Dr. Price signed the form, her treatment notes are not in the record.

It is further noted that the finding of moderate or marked limitations in functioning is inconsistent with the findings of the consultative examiner who noted essentially normal findings and no functional limitations except for allegations by the claimant.  Disability Determination Service sources assessed only mild limitations in functioning which is supported by the record which shows essentially stable mental condition, no hospitalization, relatively conservative mental health treatment, and improvement with medication.

Thus, the record as a whole supports a finding that the claimant has no more than mild limitations in mental functioning due to her mental impairments, and thus, they are not severe.

Initially, the court notes that Ms. Williamson is a marriage and family therapist and therefore not an acceptable medical source but an "other source."  See 20 C.F.R. § 913(a) (defining acceptable medical sources as physicians, psychologists, among others); see also 20 C.F.R. § 913(d) (defining "other source" to include therapists); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ may consider this evidence but is not required to adhere to the treating physician rule in evaluating it.  See Koschnitzke v. Barnhart, 293 F. Supp. 2d 943, 950 (E.D. Wisc. 2003).  The court also notes that Dr. Price did not render a separate opinion, and it appears that the mental disorder assessment was completed by Ms. Williamson as it is handwritten in the same handwriting as Ms. Williamson's signature.  Further, the record does

1    not contain separate treatment records by Dr. Price.  Instead, she is merely listed as staff on

2    reports authored by Ms. Williamson.[3]  For the most part, Dr. Price is not listed at all on treating

3    records signed by Ms. Williamson, and it is apparent from these records that Ms. Williamson was

4    the true treating source.

5            In any event, the assessments provided by the treating sources are contradicted by

6    the assessment provided by the agency examining psychiatrist, Ramon Garcia, M.D.   On

7    examination, Dr. Garcia noted clear thinking good concentration, good memory, no delusions or

8    hallucinations, and good eye contact.  He also noted average intellectual functioning.  As to

9    plaintiff's functional abilities, Dr. Garcia opined that plaintiff is able to understand and

10   communicate well and did not specify any limitations.  He assessed a GAF rating of 70.  Because

11   Dr. Garcia's opinion contradicts the assessments provided by plaintiff's treating sources, the ALJ

12   was required to resolve the conflict.  In doing so, he set out the conflicting opinions and also

13   observed that the ultimate assessments of the treating sources were not supported by their

14   treatment notes.

15           The court notes that plaintiff does not challenge Dr. Garcia's assessment.  Rather,

16   she only argues that it is possible for an individual to demonstrate normal cognitive functioning

17   ". . . but nevertheless have difficulty concentrating or maintaining persistence and pace."  While

18   this may be true, Dr. Garcia did not observe any difficulties with concentration or maintaining

19   persistence and pace.  To the contrary, Dr. Garcia observed good concentration and opined that

20   plaintiff's overall functional ability was 70 on a 100-point scale.  Moreover, while plaintiff states

21   that the treating sources "saw her for a total of twenty-two sessions," she does not challenge the

22   ALJ's conclusion that treatment notes were sparse.[4]

23   _____

24      [3]      A separate mental assessment questionnaire was completed by Ms. Williamson,
     and neither Dr. Price nor any other physician signed the questionnaire in the space provided.

25      [4]      The court rejects plaintiff's apparent argument that the ALJ was not entitled to
26   rely on Dr. Garcia's assessment because he only saw plaintiff on one occasion.   The ALJ is
     legitimately permitted to rely on a consultant rather than a treating source due to minimal clinical

1    The court finds that the ALJ's analysis of the contradictory medical opinions in

2  this case was based on proper legal analysis and supported by substantial evidence.  Specifically,

3  the ALJ set forth clear and legitimate reasons, these being sparse treatment notes and clinical

4  observations inconsistent with the assessed limitations.

5  **B.    Severity Determination**

6    In order to be entitled to benefits, the plaintiff must have an impairment severe

7  enough to significantly limit the physical or mental ability to do basic work activities.  See 20

8  C.F.R. §§ 404.1520(c), 416.920(c).[5]  In determining whether a claimant's alleged impairment is

9  sufficiently severe to limit the ability to work, the Commissioner must consider the combined

10  effect of all impairments on the ability to function, without regard to whether each impairment

11  alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir.

12  1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment,

13  or combination of impairments, can only be found to be non-severe if the evidence establishes a

14  slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

15  Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

16  1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

17  impairment by providing medical evidence consisting of signs, symptoms, and laboratory

18  findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

19  is insufficient.  See id.

20  / / /

21  / / /

22

23  findings.  See Meanel, 172 F.3d at 1113.

24    [5]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
25  carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
26  in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1    Plaintiff argues:

2            In this case, the ALJ found that the claimant's mental impairments
     were not severe (CT).  His main reason for doing so was that he rejected
3    the opinion of the treating source which clearly indicates a mental
     impairment which imposes significant limitations on plaintiff's
4    functioning.  Therefore, the record supports the existence of a severe
     impairment.
5            It was the opinion of plaintiff's practitioners that their patient had
     marked limitations in several areas, including ability to perform at a
6    consistent pace and ability to accept instructions.  Moreover, there were
     many areas of functioning which were moderately impaired.  Clinical
7    observations included difficulty with concentration and a tendency to
     become easily angered (CT).  Clearly, the evidence rises to the standard
8    required by law to be considered a "severe" impairment.

9    Plaintiff argument is based entirely on her assertion that the ALJ erred in rejecting the limitations

10   assessed by Ms. Williamson and Dr. Price.  As discussed above, the court finds no error in the

11   ALJ's analysis of the treating sources' contradicted assessments.  In addition, the court finds that

12   Dr. Garcia's assessment – which plaintiff completely ignores in her argument – constitutes

13   substantial evidence supporting the ALJ's severity determination.

14

15                                   **V.  CONCLUSION**

16           Based on the foregoing, the court concludes that the Commissioner's final

17   decision is based on substantial evidence and proper legal analysis.  Accordingly, the

18   undersigned recommends that:

19           1.      Plaintiff's motion for summary judgment (Docs. 15 and 16) be denied;

20           2.      Defendant's cross-motion for summary judgment (Doc. 17) be granted;

21   and

22           3.      The Clerk of the Court be directed to enter judgment and close this file.

23           These findings and recommendations are submitted to the United States District

24   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

25   after being served with these findings and recommendations, any party may file written

26   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

                                              11

1  Findings and Recommendations."  Failure to file objections within the specified time may waive

2  the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3

4   DATED: July 25, 2008

5                                                    _____

6                                                    **CRAIG M. KELLISON**
                                                     UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26